Slip Op. 15-138

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TAI SHAN CITY KAM KIU ALUMINIUM EXTRUSION CO. LTD.,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | Before: Claire R. Kelly, Judge |
| **Defendant,** | Court No. 14-00016 |
| **and** | |
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,** | |
| **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's remand redetermination in the first countervailing duty review of aluminum extrusions from the People's Republic of China.]

Dated: December 14, 2015

William Ellis Perry, Dorsey & Whitney, LLP, of Seattle, WA, for Plaintiff.  With him on the brief was Emily Lawson.

Douglas Glenn Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of Counsel on the brief was Jessica Marie Link, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Robert Edward DeFrancesco, III, Wiley Rein, LLP, of Washington, DC, for Defendant-Intervenor.  With him on the brief was Alan Hayden Price.

Kelly, Judge: Before the court for review is the U.S. Department of Commerce's ("Commerce" or "Department") remand redetermination filed pursuant to the court's decision in Tai Shan City Kam Kiu Aluminium Extrusion Co. v. United States, 39 CIT __, 58 F. Supp. 3d 1384 (2015) ("Tai Shan"). See generally Final Results of Redetermination Pursuant to Court Remand, Aug. 13, 2015, ECF No. 60-1–3 ("Remand Results"). The court in Tai Shan remanded Commerce's final determination in the first administrative review of the countervailing duty ("CVD") order covering certain aluminum extrusions from the People's Republic of China ("PRC" or "China") for Commerce to reconsider its corroboration methodology in calculating Plaintiff Tai Shan City Kam Kiu Aluminium Extrusion Co. Ltd.'s ("Kam Kiu") adverse facts available ("AFA") rate.[1] See Tai Shan, 39 CIT at __–__, 58 F. Supp. 3d at 1391–1396; see also Aluminum Extrusions From the People's Republic of China, 79 Fed. Reg. 106 (Dep't Commerce Jan. 2, 2014) (final results of countervailing duty administrative review; 2010 and 2011) ("Final Results") and accompanying Issues and Decision Memorandum for Aluminum Extrusions from the People's Republic of China, C-570-968, (Dec. 26, 2013), available at http://enforcement.trade.gov/frn/summary/prc/2013-31407-1.pdf (last visited Dec. 7, 2015) ("Final I&D Memo"); Aluminum Extrusions From the People's Republic of China,

---

[1] Although 19 U.S.C. § 1677e(a)–(b) (2012) and 19 C.F.R. § 351.308(a)–(c) (2013) each separately provide for the use of facts otherwise available and the subsequent application of an adverse inference to those facts, Commerce uses the shorthand term "adverse facts available" or "AFA" to refer to Commerce's use of such facts otherwise available with an adverse inference. See e.g., Final I&D Memo at 6–11 (discussing Commerce's application of AFA to uncooperative companies).

76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order).  For the reasons set forth below, the court sustains Commerce's Remand Results.

## BACKGROUND

The court assumes familiarity with the facts of this case as set out in the previous opinion ordering remand to Commerce and now recounts the facts as relevant to the court's review of the Remand Results.  See Tai Shan, 39 CIT at __–__, 58 F. Supp. 3d at 1386–87.  Kam Kiu commenced this action and subsequently filed a Rule 56.2 motion for judgment on the agency record challenging Commerce's Final Results.  In the court's review of the Final Results, Kam Kiu challenged Commerce's decision to use AFA and, in the alternative, Commerce's calculation of Kam Kiu's AFA rate.  See id. at __–__, 58 F. Supp. 3d at 1385–86.  Specifically, Kam Kiu alternatively argued that Commerce improperly attributed all location-specific subsidies throughout the PRC offered by the government of China and the "Export Rebate for Mechanical, Electronic, and High-Tech Products" program ("Export Rebate Program") to Kam Kiu in calculating its AFA rate.  See id. at __, 58 F. Supp. 3d at 1386.

After considering Kam Kiu's failure to timely submit its quantity and value ("Q&V") questionnaire response, the court in Tai Shan found Commerce reasonably refused to consider Kam Kiu's untimely Q&V questionnaire response for purposes of deciding whether to apply AFA in the Final Results.  See id. at __–__, 58 F. Supp. 3d at 1387–91.  However, the court also held that Commerce's calculation of Kam Kiu's 121.22% AFA rate was not supported by substantial evidence because Commerce failed to corroborate the location-specific subsidies and the Export Rebate Program attached to the AFA rate,

resulting in an uncorroborated aggregate AFA rate.  See id. at __–__, 58 F. Supp. 3d at

1391–96.  Accordingly, the court remanded the Final Results for Commerce to reconsider

its corroboration methodology and instructed Commerce to "either attempt to corroborate

Kam Kiu's ability to benefit from these programs simultaneously in the first instance, or . .

. adjust its methodology as applied to Kam Kiu and corroborate its findings under its new

methodology."  Id. at __, 58 F. Supp. 3d at 1394.

Commerce issued its draft remand redetermination on June 23, 2015 and

accepted comments from interested parties until July 3, 2015.  See generally Draft

Results of Redetermination Pursuant to Court Remand, PD 2 at bar code 3285912-01

(June 23, 2015) ("Draft Remand Results").  In the Draft Remand Results, Commerce,

under protest,[2] adjusted its corroboration methodology and removed the location-specific

subsidies from Kam Kiu's AFA rate other than those available to companies in the area

immediate to Kam Kiu's mailing address within Guangdong Province.  See id. at 16.

However, despite the adjustment, Commerce explained as part of its protest why it

believed its Final Results were nonetheless supported by substantial evidence and in

accordance with law.  See id. at 8–17.  Commerce continued to attribute the Export

Rebate Program to Kam Kiu, but provided further explanation to support its determination.

See id. at 17–20.  Commerce additionally explained that corroboration of the aggregate

AFA rate is achieved through corroboration of the individual subsidy programs.  See id.

---

[2] The Court of Appeals for the Federal Circuit has held that even though Commerce may
technically be the prevailing party where the Court of International Trade sustains its decision
after remand, Commerce may adopt its position "under protest" to preserve its right to appeal.
See Viraj Group, Ltd. v. United States, 343 F.3d 1371, 1376 (Fed. Cir. 2003).

at 23–29.  Commerce's changes from the <u>Final Results</u> on remand resulted in a revised AFA rate of 79.80% for Kam Kiu.  <u>See</u> <u>id.</u> at 37–38.

On July 2, 2015, Kam Kiu submitted comments to Commerce regarding the Draft Remand Results.  <u>See generally</u> Comments on Draft Remand Results, PD 5 at bar code 3288298-01 (July 2, 2015).  With respect to the location-specific subsidies, Kam Kiu commented that Commerce's Draft Remand Results were consistent with the court's order in <u>Tai Shan</u>, <u>see</u> <u>id.</u> at 9–10, but took issue with Commerce's protest characterizing it as "a reiteration of the Department's stated basis for application of the 121.22 percent AFA rate . . . in an attempt to support its original determination."  <u>Id.</u> at 11.  Kam Kiu, however, continued to challenge Commerce's inclusion of the Export Rebate Program because Commerce "makes no attempt to answer the [c]ourt's question on how . . . Kam Kiu could have availed itself of the benefits of the program."  <u>Id.</u> at 21.  Regarding the aggregate AFA rate, Kam Kiu contended that in order to comply with the court's remand order "[t]he Department must corroborate its information to ensure that the aggregate rate—and not just the individual rate for each program—is relevant and reliable to Tai Shan City Kam Kiu . . . by comparing this aggregate rate to the rate calculated for the mandatory respondents."  <u>Id.</u> at 23–24.

Despite Kam Kiu's comments, Commerce made no substantive changes to the Draft Remand Results and submitted its final remand redetermination to the court for review on August 13, 2015.  <u>See generally</u> <u>Remand Results</u>.  On September 14, 2015, Kam Kiu filed comments with the court regarding Commerce's Remand Results.  <u>See generally</u> Pl.'s Comments on the Department of Commerce Remand Redetermination,

Sept. 14, 2015, ECF No. 62.  Kam Kiu incorporated by reference its comments on the

Draft Remand Results in support of Commerce's determination on remand to remove the

location-specific subsidies, see id. at 3, and continues to urge the court not to consider

Commerce's protest, see id. at 4 n.4, but has abandoned its challenge with respect to the

Export Rebate Program and Commerce's corroboration of the aggregate AFA rate.  See

id. at 1–2.  Accordingly, Kam Kiu asks the court to sustain the Remand Results.

On November 13, 2015, Defendant United States ("Defendant") filed its reply to

Kam Kiu's comments with the court and, aside from rejecting Kam Kiu's comment that

the court should not consider Commerce's protest in the Remand Results, requests the

court to sustain the Remand Results.  See generally Def.'s Resp. Pl.'s Comments

Remand Redetermination, Nov. 13, 2015, ECF No. 65.  Defendant-Intervenor Aluminum

Extrusions Fair Trade Committee filed its reply to Kam Kiu's comments solely to voice its

agreement with Commerce's protest.  See Resp. Aluminum Extrusions Fair Trade

Committee Pl.'s Comments Remand Results, Nov. 13, 2015, ECF No. 66.

## JURISDICTION AND STANDARD OF REVIEW

The court continues to have jurisdiction pursuant to Section 516A(a) of the Tariff

Act of 1930, as amended, 19 U.S.C. § 1516a(a) (2012),[3] and 28 U.S.C. § 1581(c) (2012).[4]

The court sustains Commerce's determinations, findings or conclusions unless they are

"unsupported by substantial evidence on the record, or otherwise not in accordance with

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[4] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

law." 19 U.S.C. § 1516a(b)(1)(B)(i).  Commerce's results in its redetermination pursuant

to court remand are also reviewed for "compliance with the court's remand order."

Nakornthai Strip Mill Public Co. Ltd. v. United States, 32 CIT 1272, 1274, 587 F. Supp.

2d 1303, 1306 (2008) (citing NMB Sing. Ltd. v. United States, 28 CIT 1252, 1259–60, 341

F. Supp. 2d 1327, 1333–34 (2004)).

## DISCUSSION

The court held in its previous opinion that Commerce reasonably resorted to AFA

to calculate Kam Kiu's CVD rate in the Final Results, but failed to corroborate Kam Kiu's

AFA rate to the extent practicable.  Tai Shan, 39 CIT at __–__, 58 F. Supp. 3d at 1387–

96.  Commerce has now corroborated Kam Kiu's AFA rate and Kam Kiu has abandoned

its other challenges.  All parties request that the court sustain the Remand Results.

Commerce however makes its request under protest.  The court now reviews

Commerce's Remand Results to determine whether Commerce's determinations on

remand are supported by substantial evidence, in accordance with law, and comply with

the court's order in Tai Shan.[5]  The court also addresses Commerce's protest.

---

[5] The court in Tai Shan remanded the Final Results to Commerce because Commerce did not meet its burden to corroborate as required by 19 U.S.C. § 1677e.  See Tai Shan, 39 CIT at __–__, 58 F. Supp. 3d at 1391–96.  On June 29, 2015, President Obama signed the Trade Preferences Extension Act of 2015 ("Act").  See Pub. L. No. 114-27, 129 Stat. 362 (2015).  Section 502 of the Act amends 19 U.S.C. § 1677e, the statute which governs Commerce's use of facts otherwise available and the subsequent application of an adverse inference to those facts, and has significantly reduced Commerce's burden to corroborate.  However, the Act does not explicitly provide an effective date.  The Court of Appeals for the Federal Circuit has recently held that Section 502 of the Act has prospective effect and "unambiguously applies only to Commerce determinations made after the date of enactment."  See Ad Hoc Shrimp Trade Action Committee v. United States, 802 F.3d 1339, 1352 (Fed. Cir. 2015).  Left open by the Court of Appeals for the

(footnote continued)

## I.        Legal Framework

Commerce has discretion to use facts otherwise available to make its determinations where "necessary information is not available on the record," or a party "withholds information that has been requested by [Commerce] . . . , fails to provide such information by the deadlines for submission of the information or in the form and manner requested . . . , [or] significantly impedes a proceeding . . . , [Commerce] . . . shall, subject to section 1677m(d) . . . , use the facts otherwise available in reaching the applicable

---

Federal Circuit is the question of whether the Act, specifically the standard for corroboration under Section 502 of the Act, is applicable to administrative redeterminations made after the enactment of the law concerning facts that occurred prior to that date, i.e., remand redeterminations that are decided after June 29, 2015 in connection with final determinations made prior to that date.

On August 6, 2015, Commerce issued a notice specifying the dates it intended to apply each statutory revision made by the Act and, in relevant part, indicated that Commerce will apply 19 U.S.C. § 1677e as amended by Section 502 of the Act to "determinations made on or after August 6, 2015." Dates of Application of Amendments to the Antidumping and Countervailing Duty Laws Made by the Trade Preferences Extension Act of 2015, 80 Fed. Reg. 46,793, 46,794 (Dep't Commerce Aug. 6, 2015) ("Application Notice"). Commerce issued its remand redetermination in this case on August 13, 2015. In the Remand Results, Commerce avers "[b]ecause of the timing and the procedural posture of this remand (i.e., we issued our draft remand on June 23, 2015, before the August 6, 2015 publication of Application Dates Announcement, 80 FR 46793, and our remand is due one week after such publication, on August 13, 2015), we did not apply the new law in this remand redetermination." Remand Results 10 n.38.

The law that will apply in this case is not in dispute. No party argues that the new law should apply. The court therefore applies the former version of 19 U.S.C. § 1677e and leaves for another day the question of which law applies to remand redeterminations made after June 29, 2015 in connection with final determinations made on or before June 29, 2015. In doing so, the court notes that Commerce's use of the general term "determinations" in the Application Notice coupled with its explanation for choosing not to apply the new law here imply that Commerce would ordinarily apply the amended law to remand redeterminations decided after June 29, 2015 that revisit final determinations made prior to that date. See Application Notice, 80 Fed. Reg. at 46,794 (providing that Commerce "will apply this provision to determinations made on or after August 6, 2015"); Remand Results 10 n.38. The court does not opine on Commerce's rationale for not seeking to apply the new law nor does the court endorse or adopt that rationale. Because Commerce has decided not to apply the new law in this remand redetermination, the court does not address whether Commerce could apply Section 502 of the Act to remand redeterminations decided after June 29, 2015 that revisit final determinations made prior to that date. That question is not before the court and has not been briefed by the parties.

determination . . . ."  19 U.S.C. § 1677e(a).  If Commerce additionally "finds that an

interested party has failed to cooperate by not acting to the best of its ability to comply

with a request for information . . . , [Commerce], in reaching the applicable determination

. . . , may use an inference that is adverse to the interests of that party in selecting from

among the facts otherwise available" to fill the factual gaps in the record.  19 U.S.C.

§ 1677e(b).  Commerce may draw adverse inferences when relying on information from

"(1) the petition, (2) a final determination in the investigation . . . , (3) any previous review

. . . or determination . . . , or (4) any other information placed on the record."  19 U.S.C.

§ 1677e(b)(1)–(4).

　　　　To calculate a CVD rate based on AFA, Commerce is unable to rely on information

that ought to have been submitted by the uncooperative respondent and must look

elsewhere.  As a result, Commerce may rely upon secondary information in calculating

an AFA rate for an uncooperative party, and, in such circumstances, Commerce "shall, to

the extent practicable, corroborate that information from independent sources that are

reasonably at [Commerce's] disposal."  19 U.S.C. § 1677e(c).[6]  Notwithstanding

Commerce's discretion to employ AFA in certain situations, Commerce's calculated AFA

rate for an uncooperative respondent must be supported by substantial evidence.  See

---

[6] Secondary information includes information derived from "[t]he petition; [a] final determination in
a countervailing duty investigation or antidumping investigation; [a]ny previous administrative
review, new shipper review, expedited antidumping review, section 753 review or section 762
review."  19 C.F.R. § 351.308(c)(1)(i)–(iii); see also 19 U.S.C. § 1677e(b)(1)–(3); Uruguay Round
Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-465, vol. 1, at 869–70
(1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199 ("SAA").  Independent sources "include, but
are not limited to, published price lists, official import statistics and customs data, and information
obtained from interested parties during the instant investigation or review."  19 C.F.R.
§ 351.308(d); SAA at 4199.

Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1325 (Fed. Cir. 2010). Commerce's statutory obligation to corroborate serves as a means to satisfy substantial evidence by "requir[ing that] Commerce . . . show some relationship between the AFA rate and the actual dumping rate."  Id.

Corroboration requires Commerce to "examine whether the secondary information to be used has probative value."  19 C.F.R. 351.308(d); Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-465, vol. 1, at 869–70 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199 ("SAA").  Commerce assesses the probative value of secondary information by evaluating whether such information is reliable and relevant to the respondent.  See Remand Results 9.  Although Commerce has broad discretion to employ adverse inferences to ensure an uncooperative party does not obtain a more favorable result than if it had fully cooperated, see SAA at 4198–99, the Court of Appeals for the Federal Circuit has interpreted the corroboration requirement as a limitation on Commerce's discretion in that it requires Commerce to assign rates that are "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance."  F. lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

Moreover, the Court of Appeals has interpreted the corroboration requirement as an affirmative burden placed on Commerce, not the companies subject to the investigation or review.  See id. at 1034 (characterizing the corroboration requirement as Commerce's "burden of providing a rate that was corroborated").  "Commerce must select secondary information that has some grounding in commercial reality."  Gallant Ocean,

602 F.3d at 1324.  Thus, the corroboration requirement's purpose within the statutory scheme is to temper Commerce's ability to maximize deterrence using potentially unreliable secondary information and ensure that the AFA rate applied remains remedial and not punitive.  See id. at 1323; see also Timken Co. v. United States, 354 F. 3d 1334, 1345 (Fed. Cir. 2004) (providing that "Commerce must balance the statutory objectives of finding an accurate dumping margin and inducing compliance").

## II.       Commerce's Determination Regarding the Location-Specific Subsidies

Commerce has adopted a two-part AFA methodology for CVD investigations and reviews.  Commerce first identifies all subsidies from which a party could conceivably have benefitted, "including all programs identified in the instant administrative review and the investigation."  Remand Results 9.  Second, it

> computes a total AFA rate for a non-cooperative company generally using program-specific rates calculated for the cooperating respondents in the instant review or in prior segments of the instant proceeding, or calculated in prior CVD cases involving the country under review (in this case, the PRC), unless it is clear that the industry in which the respondents operate cannot use the program for which the rates were calculated.

Id. at 3.  Since "there typically are no independent sources for data on company-specific benefits resulting from countervailable subsidy programs," id. at 5, Commerce implements a hierarchy to choose a proxy rate to apply to the uncooperative respondents for each of the subsidy programs attached to those respondents.[7]  See id. at 4.

---

[7] In choosing an AFA rate for a subsidy program that is attributed to uncooperative respondents, Commerce's first preference is to apply the highest calculated CVD rate that is not de minimis for an identical program from any segment of the proceeding.  See Remand Results 4.  Absent a rate for an identical program, Commerce's second preference is to apply the highest calculated

(footnote continued)

For the Final Results, Commerce applied AFA to Kam Kiu attributing to it all location-specific subsidies throughout the PRC provided by the government of China and, using proxy rates chosen by Commerce through its hierarchy, computed Kam Kiu's AFA rate of 121.22%.  See Final I&D Memo at 8; see also Final Results, 79 Fed. Reg. at 107; AFA Calculation Memorandum for the Final Results 1–3, PD 458 at bar code 3170840-01 (Dec. 26, 2013) ("Final AFA Mem.").  Commerce explained that Kam Kiu could have used all location-specific subsidies throughout the PRC at the same time and determined that drawing such an adverse inference was warranted because the record lacked any information verifying the extent of Kam Kiu's locations and cross-owned affiliates.  See Final I&D Memo at 62.

In Tai Shan, Kam Kiu challenged Commerce's determination in the Final Results arguing that Commerce unlawfully incorporated location-specific subsidy programs spanning across the entire PRC as part of Kam Kiu's AFA calculated rate.  See Tai Shan, 39 CIT at __, 58 F. Supp. 3d at 1392.  Kam Kiu argued that attributing these location-specific programs to Kam Kiu resulted in an AFA rate that was unsupported by substantial evidence and punitive.  See id.  Defendant reiterated Commerce's position that the uncertainty concerning the extent of Kam Kiu's locations warranted application of AFA for all location-specific subsidy programs and that Commerce had corroborated the AFA rate for Kam Kiu to the extent practicable.  See id. at __–__, 58 F. Supp. 3d at 1392–95.

---

CVD rate that is not de minimis for a similar program from any segment of the proceeding.  See id.  If Commerce cannot find a suitable proxy CVD rate through its first or second preference, Commerce then applies the highest calculated CVD rate that is not de minimis for the same or similar program in another proceeding in connection with the country subject to the CVD investigation or review.  See id.

After reviewing the <u>Final Results</u>, the court in <u>Tai Shan</u> held that Commerce reasonably resorted to AFA to calculate Kam Kiu's CVD rate, but failed to meet its burden to corroborate the location-specific subsidies attributed to Kam Kiu with independent sources and evidence reasonably at Commerce's disposal.  <u>See id.</u> at __, 58 F. Supp. 3d at 1394.   Specifically, the court found that "Commerce's methodology reasonably identifies subsidies from which Kam Kiu could have conceivably benefitted but does not link the ability to benefit from all of these programs simultaneously to Kam Kiu."  <u>See id.</u> Thus, the court found Commerce's methodological approach to corroboration as applied to Kam Kiu was incomplete because Commerce did not ensure that the rate is a reasonably accurate estimate of "Kam Kiu's 'actual rate, albeit with some built-in increase intended as a deterrent to non-compliance.'"  <u>See id.</u> at __, 58 F. Supp. 3d at 1395 (quoting <u>F. Ili De Cecco</u>, 216 F.3d at 1032).  Consequently, the court held that Commerce did not satisfy its corroboration requirement and, as a result, Commerce's determination was not supported by substantial evidence.  <u>See id.</u> at __–__, 58 F. Supp. 3d at 1393– 94.  The court instructed Commerce on remand to "either attempt to corroborate Kam Kiu's ability to benefit from these programs simultaneously in the first instance, or  . . . adjust its methodology as applied to Kam Kiu and corroborate its findings under its new methodology."  <u>Id.</u> at __, 58 F. Supp. 3d at 1394.

On remand, after evaluating the evidence at its disposal, Commerce, under protest, adjusted its methodology "for purposes of this remand only" and attributed to Kam Kiu the location-specific subsidies available to companies in the area immediate to Kam Kiu's mailing address within Guangdong Province.  <u>See</u> Remand Results 18–19.

Although Commerce on remand did not attribute all location-specific subsidies available throughout the PRC to Kam Kiu as Commerce had in the <u>Final Results</u>, Commerce continued to apply AFA with respect to the location-specific subsidies that remain attributed to Kam Kiu.  Commerce relied upon information taken from the underlying CVD investigation and other CVD proceedings involving the PRC identifying the location-specific subsidies from which other respondents have benefitted and applied the adverse inference that Kam Kiu availed itself of every accessible program to the fullest extent. <u>See</u> Remand Results 18–19, 25, Attach.: Final Remand Calculation of AFA Rate for Kam Kiu.  Specifically, Commerce has relied upon "[location-specific] subsidy programs administered at the national/central-government level and provincial-government level of Guangdong Province," Remand Results 19, and "subsidy rates . . . from the current administrative review as well as other PRC CVD proceedings."  Remand Results 25. Accordingly, Commerce's determination on remand regarding the location-specific subsidies, in addition to the Export Rebate Program discussed below, resulted in a revised AFA rate of 79.80% for Kam Kiu as opposed to the 121.22% AFA rate Commerce had initially calculated in the <u>Final Results</u>.  <u>See</u> <u>id.</u> at 19; <u>see also</u> <u>Final Results</u>, 79 Fed. Reg. at 107.

In applying AFA to an uncooperative respondent, Commerce shall corroborate its reliance on secondary information from independent sources reasonably at its disposal to the extent practicable.  <u>See</u> 19 U.S.C. § 1677e(c).  Commerce satisfies its corroboration requirement by demonstrating that the secondary information relied upon has probative value.  <u>See</u> 19 C.F.R. 351.308(d); SAA at 4199; <u>see also</u> Remand Results 24.  Commerce

considers the rate to be probative if it is reliable and relevant.  See Remand Results 9.

The Court of Appeals for the Federal Circuit has interpreted corroboration to require

Commerce to demonstrate that the rate is relevant to the respondent.  See Gallant Ocean,

602 F.3d at 1324 (providing that "Commerce must select secondary information that has

some grounding in commercial reality."); F. Ili De Cecco, 216 F.3d at 1032 (requiring an

AFA rate to nonetheless remain "a reasonably accurate estimate of the respondent's

actual rate").

        In the Remand Results, Commerce has complied with the court's order in Tai Shan

and has corroborated that these programs were indeed available to Kam Kiu.  Kam Kiu's

mailing address, as evidenced in its Q&V questionnaire response, demonstrates that the

location-specific programs attributed to it are reliable and relevant to it.  See Remand

Results 18–19; Kam Kiu Q&V Questionnaire Response Attach. 1 at 4, PD 356 at bar code

3138491-01 (June 3, 2013) ("Kam Kiu Q&V Response").  Kam Kiu could have used the

location-specific subsidies offered to companies in close proximity to Kam Kiu's location.

Commerce additionally explains that the CVD rates assigned to these location-specific

programs to calculate Kam Kiu's AFA rate are reliable because they were "derived from

actual subsidy rates calculated for cooperative PRC respondents" and relevant because

they are "for the same or similar type of program in the instant or prior segments of the

proceeding or other proceedings involving China."  Remand Results 25.  Therefore, these

programs and their corresponding CVD rates are probative of Kam Kiu's rate.

        It was reasonable for Commerce to infer that Kam Kiu is the type of company to

benefit from these subsidies because the subsidies were available to companies

operating in the aluminum extrusion industry within Guangdong Province.  Kam Kiu is a company that operates in the aluminum extrusion industry located in Tai Shan City, Guangdong Province.  The reasonableness of Commerce's inference is reinforced by the fact that Commerce limited its inference to only those location-specific subsidies in the immediate area encompassing Kam Kiu's mailing address within Guangdong Province. See Remand Results 19, Attach.: Final Remand Calculation of AFA Rate for Kam Kiu (indicating that many of the subsidies offered in Guangdong Province are not included in the AFA rate because "Kam Kiu is located in the Shiqian Industrial Park in Taishan, Dajiang").  Kam Kiu does not object to Commerce's determination and states that the Remand Results with respect to the location-specific subsidies comply with the court's remand order.  Thus, Kam Kiu's mailing address corroborates Commerce's adverse inference that Kam Kiu availed itself of the location-specific subsidies offered in the area immediate to its mailing address within Guangdong Province simultaneously and to the fullest extent.

In its protest on remand, Commerce insists that the evidence reasonably at its disposal does not offer corroborative value regarding Kam Kiu's ability to use the location-specific subsidies.  See Remand Results 10–17.  In Tai Shan, the court suggested that Commerce on remand might consider, among other evidence at its disposal, three particular sources of information that could potentially help satisfy its corroboration requirement: Kam Kiu's response to Commerce's Q&V questionnaire, other administrative proceedings in which Kam Kiu has participated, and information pertaining to both voluntary and mandatory respondents.  See Tai Shan, 39 CIT at __, 58 F. Supp.

3d at 1394.  Commerce dismissed these sources in the Remand Results.  It reasoned that the Q&V questionnaire response did not contain information pertaining to the "facility location or locations of Kam Kiu and/or the identity and locations of any potential cross-owned affiliates," Remand Results 11, and therefore would not be helpful.  Further, Commerce averred that the information from other proceedings was not on the record and it was not its practice "to examine a company's business proprietary information (BPI) from a separate and distinct proceeding, unless that information is placed on the record of the instant proceeding by the company whose business proprietary information is contained in the document." <u>Id.</u> at 14.  In response to the suggestion that it consider information of both mandatory and voluntary respondents, Commerce recognized that "no cooperating respondent benefitted simultaneously from all location-specific subsidy programs across the PRC" but could not assume that Kam Kiu could not have done so because it lacked "the company's cross-ownership structure and facility locations." <u>Id.</u> at 16.

Commerce's response illustrates a methodology that effectively implements a rebuttable presumption that the uncooperative company has availed itself of all identified location specific subsidies, unless it is apparent that the industry in which the company operates or a respondent could not benefit from such a program.  <u>See</u> Remand Results 10–18.  Commerce's protest reveals that it would only consider information to be corroborative if it could definitively show that either the respondent or the respondent's industry did not use a program.  Simply put, Commerce shifts its congressionally mandated affirmative burden to the respondent.  Such an approach cannot coexist with

the corroboration requirement.  Congress could not have possibly intended to place the burden on the interested parties, especially considering Congress requires Commerce to look beyond the record and use independent sources to corroborate secondary information.  See SAA at 4199; 19 U.S.C. § 1677e(c).

Moreover, not only does Commerce's methodology improperly shift the burden to the respondent, it also heightens the degree of support required for corroboration. Corroboration requires Commerce to "examine whether the secondary information to be used has probative value."   19 C.F.R. 351.308(d); SAA at 4199.   Under its AFA methodology, however, Commerce presumes an uncooperative company benefits from all of the identified subsidy programs, "unless it is clear that the industry in which the respondents operate cannot use the program for which the rates were calculated." Remand Results 3.  Due to its misguided corroboration methodology, Commerce did not find the suggested sources of information to have corroborative value when that information had the potential to corroborate whether Kam Kiu could or could not have availed itself of all or a number of the location-specific subsidy programs simultaneously. Commerce's obligation to corroborate requires it simply to put forth probative evidence indicating the company potentially benefitted from the subsidy program, see 19 C.F.R. § 351.308(d), not "dispositive" or "determinative" evidence that the company in fact did not benefit.  See Remand Results 13, 16.

Commerce also raises the concern that its determination on remand could incentivize respondents to be uncooperative in future proceedings.  See id. at 19–20. Commerce asserts that its decision on remand would somehow limit its ability to attribute

location-specific subsidies offered in locations outside of respondents' mailing address.

See id.  The court does not agree that Commerce's determination on remand regarding

the location-specific subsidies results in a perverse incentive for companies to be

uncooperative in the future.   Commerce could have attributed subsidies offered in any

location if it was able to meet its affirmative obligation to corroborate those subsidies.  A

mailing address is just one means of corroboration.  Commerce could use any information

from independent sources reasonably at its disposal to corroborate.  See 19 U.S.C.

§ 1677e(c); 19 C.F.R. § 351.308(d).  Nothing in the court's order limited Commerce to

only using Kam Kiu's mailing address.   Therefore, Commerce's assertion that an

uncooperative respondent's mailing address will have a precluding effect on Commerce's

AFA rate calculations is erroneous.

Commerce's concern that its determination on remand is an inadequate deterrent

is likewise misplaced.   Contrary to Commerce's concerns, an AFA rate of 79.80%

nevertheless remains sufficiently adverse to Kam Kiu because the rate is several times

greater than the rates applied to both the mandatory respondents and the other non-

selected respondents.[8]  Thus, Commerce's determination on remand is in line with the

underlying purpose of AFA and ensures that Kam Kiu does not obtain a more favorable

result by failing to cooperate than if Kam Kiu had cooperated fully.

---

[8] In the Final Results, Commerce assigned each of the mandatory respondents a rate of 15.97% and 1.02% for 2010 and a rate of 15.66% and 1.51% for 2011, rates which themselves carried adverse inferences, and assigned the other non-selected respondents a weight-averaged rate of 10.23% for 2010 and a weight-averaged rate of 9.67% for 2011.  See Final Results, 79 Fed. Reg. at 107; see also Final I&D Memo at 10–11.

For the foregoing reasons, Commerce's determination in the Remand Results to calculate Kam Kiu's AFA rate including the location-based subsidies available to companies in the area immediate to Kam Kiu's mailing address within Guangdong Province is supported by substantial evidence. Commerce's decision complies with the court's order in <u>Tai Shan</u>, and is thus sustained.

III.     **Commerce's Determination Regarding the Export Rebate Program**

As described above, Commerce as part of its AFA methodology identifies all subsidies from which a party could conceivably have benefitted "including all the programs in the instant review and investigation," Remand Results 9, and thereafter

> computes a total AFA rate for a non-cooperative company generally using program-specific rates calculated for the cooperating respondents in the instant review or in prior segments of the instant proceeding, or calculated in prior CVD cases involving the country under review (in this case, the PRC), unless it is clear that the industry in which the respondents operate cannot use the program for which the rates were calculated.

<u>Id.</u> at 3.  Commerce chooses a CVD rate for the identified subsidies in accordance with its proxy rate hierarchy.  <u>See</u> <u>id.</u> at 4.  In the <u>Final Results</u>, Commerce identified the Export Rebate Program as a countervailable subsidy from which a voluntary respondent benefitted in the underlying CVD investigation and thus, in accordance with its AFA methodology and proxy rate hierarchy, attributed the Export Rebate Program to Kam Kiu. <u>See</u> <u>Final I&D Memo</u> at 7–8; <u>see also</u> Final AFA Mem. 1–2; Questionnaire to Kromet International, Inc. III-9, PD 204 at bar code 3104383-01 (Nov. 5, 2012) (providing that Commerce found the Export Rebate Program to be countervailable in the CVD investigation).

In Tai Shan, Kam Kiu challenged Commerce's determination in the Final Results and argued that Commerce unlawfully included the Export Rebate Program within Kam Kiu's AFA rate.  See Tai Shan, 39 CIT at __, 58 F. Supp. 3d at 1392.  Specifically, Kam Kiu argued the Export Rebate Program was clearly not for the industry within which Kam Kiu operates.  See id.  Accordingly, Kam Kiu argued that attributing the Export Rebate Program to Kam Kiu resulted in an AFA rate that was unsupported by substantial evidence.  See id.  Defendant responded that Commerce properly included the Export Rebate Program in Kam Kiu's AFA rate because although the mandatory respondents did not benefit from the program in the instant review, Commerce found the program was used by a voluntary respondent in the underlying CVD investigation.  See id. at __, 58 F. Supp. 3d at 1397.  Therefore, Defendant maintained that Commerce had corroborated Kam Kiu's AFA rate to the extent practicable.

In addition to holding that Commerce failed to corroborate the location-specific subsidies, the court in Tai Shan similarly held that Commerce failed to corroborate Kam Kiu's use of the Export Rebate Program to the extent practicable with independent sources reasonably at Commerce's disposal.  Tai Shan, 39 CIT at __, 58 F. Supp. 3d at 1395.  The court found that Commerce's AFA methodology failed to corroborate the assumption that Kam Kiu could have benefitted from the Export Rebate Program.  Id. at __, 58 F. Supp. 3d at 1394.  The court also noted "[e]vidence that mandatory respondents did not use the program detract[ed] from Commerce's finding."  Id. at __, 58 F. Supp. 3d at 1395.  Thus, the court found Commerce's corroboration methodology did not adequately achieve its intended purpose because it did not "ensure[] that the rate is 'a

reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance.'" Id. at __, 58 F. Supp. 3d at 1396 (quoting F. lli De Cecco, 216 F.3d at 1032).  Accordingly, the court held that Commerce failed to corroborate the Export Rebate Program, and, therefore, Commerce's determination was not supported by substantial evidence.  Id.  Similar to the court's instruction with regard to the location-specific subsidies, the court ordered Commerce on remand to "either attempt to corroborate Kam Kiu's ability to benefit from these programs simultaneously in the first instance, or can adjust its methodology as applied to Kam Kiu and corroborate its findings under its new methodology."  Id. at __, 58 F. Supp. 3d at 1394.

On remand, Commerce reiterated its position that it had corroborated Kam Kiu's use of the Export Rebate Program to the extent practicable, but has provided further explanation for its determination.  See Remand Results 20–23.  Commerce explained that because a voluntary respondent examined in the underlying CVD investigation benefitted from the program and was located in the same province as Kam Kiu, it is reasonable to conclude that "the industry in which Kam Kiu operates is eligible for a grant under the program."  Id. at 22.

In the Remand Results, Commerce has complied with the court's order in Tai Shan and has corroborated that Kam Kiu could have benefitted from the Export Rebate Program by relying upon the fact that Kam Kiu is a producer of subject merchandise located in Guangdong Province.  Here, Commerce relied upon information taken from the underlying CVD investigation and another CVD proceeding involving the PRC and applied

the adverse inference that Kam Kiu availed itself of the Export Rebate Program to the fullest extent.  See id. at 20–21, Attach.: Final Remand Calculation of AFA Rate for Kam Kiu.  Specifically, Commerce has relied upon the underlying CVD investigation for the fact that "a PRC producer of subject merchandise received a grant under the 'Export Rebate for Mechanic, Electronic, and High-Tech Products' program from the Bureau of Finance of Guangdong Province," see id. at 20, and "an AFA rate of 0.55 percent, which is the highest calculated rate, in any PRC CVD proceeding, for a grant program."[9]  See id. at 33, Attach.: Final Remand Calculation of AFA Rate for Kam Kiu.

To comply with the court's remand order, Commerce provided additional information and explanation regarding the Export Rebate Program to corroborate the applicability of this rate.  Specifically, Commerce explains that not only did the voluntary respondent in the underlying CVD investigation use the Export Rebate Program but it was also located in Guangdong Province, making it reasonable to infer that the subsidy was available to other companies in Guangdong Province.  See id. at 22.  Commerce can corroborate the rate by showing that it is reliable and relevant to Kam Kiu, by virtue of

---

[9] The voluntary respondent in the underlying CVD investigation benefitted from the Export Rebate Program.  See Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Aluminum Extrusions from the People's Republic of China (PRC) 14, 28–29, C-570-968, (Mar. 28, 2011), available at http://enforcement.trade.gov/frn/summary/prc/2011-7926-1.pdf (last visited Dec. 7, 2015). However, Commerce did not apply the CVD rate from the investigation because it was de minimis. See id. at 29.  Therefore, Commerce, in accordance with its proxy rate hierarchy, selected the highest calculated CVD rate that is not de minimis for a similar program in another proceeding involving the PRC, which was 0.55%.  See Remand Results Attach.: Final Remand Calculation of AFA Rate for Kam Kiu; see also Final AFA Mem. 1–2 (providing that Commerce sourced the CVD rate for the Export Rebate Program from Utility Scale Wind Towers from the People's Republic of China, 77 Fed. Reg. 75,978 (Dep't Commerce Dec. 26, 2012) (final affirmative countervailing duty determination)).

Kam Kiu's mailing address in its Q&V questionnaire response.  See Kam Kiu Q&V

Response Attach. 1 at 4.  That information and explanation suffices to establish the

reasonableness of Commerce's determination concerning the Export Rebate Program

and that determination is no longer challenged by Kam Kiu.  Commerce's determination

regarding the Export Rebate Program in the Remand Results is supported by substantial

evidence and complies with the court's remand order in Tai Shan.  Further, although Kam

Kiu commented on Commerce's arguments in its draft remand determination, Kam Kiu

has since abandoned its arguments with respect to this program.  The court therefore

sustains Commerce's determination with respect to the Export Rebate Program.

## IV.      Corroboration of Kam Kiu's Aggregate AFA Rate

In Kam Kiu's original challenge to Commerce's Final Results, Kam Kiu argued that

Commerce improperly attributed all location-specific subsidies offered by the government

of China throughout the PRC and the Export Rebate Program to Kam Kiu in calculating

its AFA rate, and, in doing so, Kam Kiu's aggregate AFA rate was rendered

uncorroborated, not supported by substantial evidence and punitive.  See Tai Shan, 39

CIT at __, 58 F. Supp. 3d at 1392.  Defendant responded that Commerce's determination

to include all location-specific subsidies and the Export Rebate Program was proper and

Commerce corroborated Kam Kiu's AFA rate to the extent practicable.  See id. at __, 58

F. Supp. 3d at 1395.

In Tai Shan, after coming to the conclusion that Commerce failed to corroborate

attributing all the location-specific subsidies and the Export Rebate Program to Kam Kiu,

the court stated that the 121.22% AFA rate "applied to Kam Kiu is punitive . . . [because]

Commerce has not explained how this rate relates to Kam Kiu or why it is necessary to deter noncompliance." Id. at __, 58 F. Supp. 3d at 1396.  The court then summarized the adverse inferences Commerce used in calculating Kam Kiu's aggregate AFA rate, which included applying the highest calculated above de minimis rate for each subsidy attributed to Kam Kiu, attributing all conceivably used subsidies to Kam Kiu, and assuming that Kam Kiu availed itself of all these subsidies simultaneously.  Id.  The court explained that Commerce's failure to corroborate each of its adverse inferences as applied to Kam Kiu and the "building of adverse inferences on top of each other" compounded the error, and, as a result, concluded that the aggregate AFA rate was rendered unsupported by substantial evidence.  See id.

On remand, Commerce explained that its practice does not involve additionally corroborating the aggregate AFA applied to uncooperative respondents.  See Remand Results 25–26.  Specifically, Commerce explained that it satisfies the corroboration requirement in CVD proceedings by corroborating to the extent practicable the individual programs and the corresponding subsidy rates.  See id. at 26–27.  Commerce additionally noted that it does not corroborate the aggregate AFA rate for an uncooperative respondent by comparing that rate to the rates assigned to the mandatory respondents.  See id. at 25–26.  Commerce interpreted the court's holding in Tai Shan as ordering it on remand to additionally corroborate the aggregate AFA rate as applied to Kam Kiu.  See id. at 28.  To that end, Commerce claimed that the aggregate AFA rate is related to Kam Kiu because "the rate is significantly lower than the all others rate of 137.65 percent for this CVD order" and "[t]hus, . . . aluminum extrusion producers can experience levels of

subsidization higher than the AFA rate calculated for Kam Kiu in this final remand." Id. at 28–29.

Commerce initially stated it understands Tai Shan as holding that Commerce "failed to explain how the final aggregate AFA rate relates to Kam Kiu." Id. at 23. Commerce interprets the language "[t]his building of adverse inferences on top of each other to create a rate that Commerce does not corroborate in the aggregate leaves the court with the impression that the rate is punitive," Tai Shan, 39 CIT at __, 58 F. Supp. 3d at 1396, as requiring Commerce to additionally corroborate the aggregate AFA rate applied to Kam Kiu. See Remand Results 23. However, the court in Tai Shan simply expressed concerns that the inclusion of uncorroborated subsidy programs resulted in an uncorroborated, and thus potentially punitive, aggregate AFA rate. Tai Shan, 39 CIT at __, 58 F. Supp. 3d at 1396. To illustrate its concerns, the court observed that Kam Kiu's applied rate of 121.22% appeared to be punitive in light of the fact that the "rate is in stark contrast to the rates applied to the mandatory respondents," and the mandatory respondents' rates included adverse inferences as well. Id.; see also Gallant Ocean, 602 F.3d at 1324 (questioning the validity of Commerce's applied AFA rate by referencing the range of dumping margins for the cooperating respondents). The court's remand order did not obligate Commerce to take an additional measure in its corroboration analysis by corroborating the aggregate AFA rate applied to Kam Kiu, nor did the remand order obligate Commerce to compare the aggregate AFA rate to the rates applied to the mandatory respondents. The court remanded to Commerce for failing to corroborate the

subsidy programs attached to Kam Kiu's AFA rate, resulting in an uncorroborated aggregate AFA rate.

Commerce's approach in calculating an AFA rate for an uncooperative respondent dictates how Commerce must proceed to satisfy its obligation to corroborate.   If Commerce chooses to identify all of the countervailable subsidies used by cooperating respondents in any segment of the instant proceeding and then uses the sum of the identified subsidies to reach an aggregate AFA rate, then Commerce must corroborate each of the subsidy programs included within the aggregate AFA rate to satisfy its corroboration requirement.   If on the other hand Commerce chooses to carry over a previously calculated rate and apply that rate to the uncooperative respondent, then Commerce must corroborate that singular rate to satisfy its corroboration requirement. Commerce has corroborated the aggregate AFA rate here through corroboration of the individual programs included within Kam Kiu's rate.

## CONCLUSION

For the reasons explained above, the court determines that the Remand Results comply with the court's remand order in Tai Shan, are supported by substantial evidence, and are otherwise in accordance with law.  The Remand Results are therefore sustained. Judgment will be entered accordingly.

  /s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: December 14, 2015
        New York, New York